IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

JULIA M., on behalf of herself and her    )
minor child, J.W.M., and all others similarly )
situated,         )
        )
      Plaintiffs,     )
        )
   v.        )   Case No.  07-4036-CV-C-NKL
        )
DEBORAH E. SCOTT, Director of the   )
Missouri Department of Social Services,   )
JANEL R. LUCK, Interim Director of the  )
Missouri Family Support Division, and   )
STEVE RENNE, Interim Director of the   )
Missouri Division of Medical Services,   )
        )
      Defendants.    )

ORDER

Plaintiff Julia M. seeks injunctive relief on behalf of her daughter, J.W.M, and a

class of "[a]ll children residing in Missouri and who are receiving or who will receive

MC+ health coverage and are required to pay a premium under Mo. Rev. Stat. §

208.640."[1]  Specifically, Plaintiff asks the Court to enjoin Defendants (a) to notify all

MC+ recipients who are disenrolled from MC+ health coverage for failure to meet

premium requirements of their right to appeal prior to disenrollment; (b) to provide the

---

[1]MC+ is a statewide medical assistance program for low-income families, pregnant women, and
children under the age of 19.  The Court certified a class of such recipients in its June 25, 2007
Order [Doc. # 39]

1

opportunity for continued enrollment and aid pending a hearing; and (c) to first determine whether such MC+ recipients are otherwise eligible for medical assistance. Pending before the Court is Plaintiffs' Motion for Preliminary Injunction [Doc. # 11]. For the reasons set forth below, the Preliminary Injunction is granted.

## I.     Regulatory Background

Missouri's State Children's Health Insurance Program (SCHIP) is a jointly funded state and federal program that provides health assistance to uninsured, low income children whose family income is above the State's Medicaid income limits, but who cannot afford private health insurance. 42 U.S.C. § 1397aa-jj. Congress has provided that states participating in such a joint program have two options for its implementation. The state may either create (1) a separate child health program or (2) provide insurance through an expansion of its existing Medicaid program. 42 U.S.C. § 1397aa(a)(2); 42 C.F.R. § 457.70(a)(1)-(2). Both parties agree that Missouri has chosen the latter option by creating Medicaid MC+, a Medicaid expansion program under which

> Parents and guardians of uninsured children with incomes between one hundred fifty-one and three hundred percent of the federal poverty level who do not have access to affordable employer-sponsored health care insurance or other affordable health care coverage may obtain coverage pursuant to this section. . . . The parents and guardians of eligible uninsured children pursuant to this section are responsible for a monthly premium equal to the average premium required for the Missouri consolidated health care plan . . . .

Mo. Rev. Stat. § 208.640. However, if a participating parent fails to make a payment, "the child shall not be eligible for coverage under [Mo. Rev. Stat.] sections 208.631 to 208.660 for six months after the department provides notice of such failure to the parent

or guardian." Mo. Rev. Stat. § 208.646. At issue in this lawsuit is what amount of process is due to MC+ recipients before their benefits are terminated for nonpayment of the required premium.

When a state elects to provide health insurance for the children of the working poor through an expansion of its Medicaid program rather than through a separate child health program, the expansion program "must . . . [b]e consistent with the State's Medicaid State plan, or an approvable amendment to that plan, as required under title XIX [of the Social Security Act]." 42 C.F.R. § 457.70(c)(2). Thus, as both parties agree, the regulations governing Medicaid generally, 42 C.F.R. § 430 *et seq.*, rather than those governing separate child health insurance programs specifically, 42 C.F.R. § 457 *et seq.*, dictate Missouri's obligations to the participants in its Medicaid expansion program.

Under Title XIX of the Social Security Act and its implementing regulations, Missouri is obligated to provide a certain level of due process before it can terminate benefits. *See* 42 U.S.C. § 1396a(a)(3) ("A State plan for medical assistance must . . . (3) provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness."). Therefore, "[a]t the time of any action affecting his or her claim," "[t]he agency must . . . inform every applicant or recipient in writing--(1) Of his right to a hearing; (2) Of the method by which he may obtain a hearing; and (3) That he may represent himself or use legal counsel, a relative, a friend, or other spokesman." 42 C.F.R. § 431.206(b)(1)-(3),(c)(2). With immaterial exceptions, the

3

notice required under § 431.206(c)(2) must be mailed to the recipient "at least 10 days before the date of action," 42 C.F.R. § 431.211, and must inform the recipient of

> (a) A statement of what action the State, skilled nursing facility, or nursing facility intends to take;
> (b) The reasons for the intended action;
> (c) The specific regulations that support, or the change in Federal or State law that requires, the action;
> (d) An explanation of--(1) The individual's right to request . . . a State agency hearing; . . . and
> (e) An explanation of the circumstances under which Medicaid is continued if a hearing is requested.

42 C.F.R. § 431.210. Further, a "State agency must grant an opportunity for a hearing to . . . (2) Any recipient who requests it because he or she believes the agency has taken an action erroneously." 42 C.F.R. § 431.220. Although the Agency "may require that a request for a hearing be in writing,

> (b) The agency may not limit or interfere with the applicant's or recipient's freedom to make a request for a hearing.
> (c) The agency may assist the applicant or recipient in submitting and processing his request.
> (d) The agency must allow the applicant or recipient a reasonable time, not to exceed 90 days from the date that notice of action is mailed, to request a hearing.

42 C.F.R. § 431.221. Most importantly, and with immaterial exceptions,

> (a) If the agency mails the 10-day . . . notice as required under § 431.211 . . . of this subpart, and the recipient requests a hearing before the date of action, the agency may not terminate or reduce services until a decision is rendered after the hearing . . . .

42 C.F.R. § 431.230. And finally, "[t]he agency must (a) Furnish Medicaid promptly to recipients without any delay caused by the agency's administrative procedures; [and] (b)

4

Continue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible." 42 C.F.R. § 435.930.

## II.    Factual Background

Under the MC+ program, families with an income between 151 and 300 percent of the federally determined poverty level are required to pay a monthly premium for their insurance benefits.  Mo. Rev. Stat. § 208.640.  For families with an income between 226 and 300 percent of the poverty level, nonpayment of the premium after notice of delinquency results in termination of benefits for six months.  Mo. Rev. Stat. § 208.646.

Through a series of bank errors, JWM's August MC+ premium was not automatically deducted from her mother's account in a timely fashion.  Defendants assert that Julia M. was notified of the nonpayment by letter dated August 3, 2006 and told that she had until August 15 to pay the premium or JWM's benefits would be terminated.  Neither party has produced this original letter to the Court, and there is a factual dispute as to what state officials told Julia M. during her efforts to get the premium paid.  In any event, Julia M. received a second letter dated August 25 which stated as follows:

> This is to confirm that your children's MC+ health care coverage ended effective 8-23-2006.  MC+ coverage ended because the full premium of $156.00 was not paid.  Your children may not be eligible for MC+ health care coverage for six (6) months. . . .
>
> You have the right to appeal this decision.  You can ask for a hearing within 90 days of the date of this letter by [calling or writing the Division of Medical Services].

5

Def. Sugg. Opp. Class Cert., Ex. A. [Doc. # 25-2]. Defendants admitted in their class certification brief that "this notification letter is standard correspondence" sent to MC+ recipients who fail to pay their monthly premium. Def. Sugg. Opp. Class Cert. at 5.

Following the initiation of this lawsuit, J.W.M.'s MC+ coverage was voluntarily reinstated by the Defendants. Because the Court found that termination without a pre-deprivation hearing is an act capable of repetition yet evading review, the Court concluded that J.W.M's lawsuit was not moot. After full consideration of the standards for class certification, the Court certified a proposed class of "[a]ll children residing in Missouri and who are receiving or who will receive MC+ health coverage and are required to pay a premium under Mo. Rev. Stat. § 208.640." It is on their behalf that Plaintiffs now seek a preliminary injunction.

## III.  Preliminary Injunction

The Eighth Circuit has held that "whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc. v. C L Systems, Inc*., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  "The burden of establishing the propriety of a preliminary injunction is on the movant." *Baker Elec. Coop. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994).

### A.  Irreparable Harm

Case 2:07-cv-04036-NKL   Document 42   Filed 07/09/07   Page 6 of 11

Although Defendants contest the potential for irreparable harm to the plaintiff class as speculative and unsupported by evidence, the Court concludes that the potential for irreparable harm is patently obvious. J.W.M.'s benefits were terminated and could not be reinstated for six months because of a banking error. A potential lapse in medical coverage for the children of the working poor who are otherwise unable to pay for needed medical attention is an irreparable harm of the highest order. Although Julia M. has not produced specific evidence that other children in the class would face the same potential harm, the "standard correspondence" letter issued by the Defendants when J.W.M.'s benefits were terminated suggests that other MC+ recipients have received similar letters and therefore face the same potential for irreparable harm. Counsel for the Defendants in fact indicated that it was the policy of the Department to send out such letters when timely payments were not received. .

**B.       Likelihood of Success on the Merits**

At oral argument, Defendants also contested the likelihood of Plaintiffs succeeding on the merits. However, from the evidence presently before the Court, namely the termination letter of August 23, 2006, and the admissions by defense counsel that such correspondence is "standard," the Court finds a high probability of success on the merits. The regulations which both parties agree govern the state's obligations under the MC+ program require that "[a]t the time of any action affecting his or her claim," "[t]he agency must . . . inform every applicant or recipient in writing--(1) Of his right to a hearing; (2) Of the method by which he may obtain a hearing; and (3) That he may represent himself

Case 2:07-cv-04036-NKL    Document 42    Filed 07/09/07    Page 7 of 11

or use legal counsel, a relative, a friend, or other spokesman." 42 C.F.R. § 431.206(b)(1)-

(3),(c)(2). With immaterial exceptions, the notice required under § 431.206(c)(2) must be

mailed to the recipient "at least 10 days before the date of action," 42 C.F.R. § 431.211,

and must inform the recipient of

> (a) A statement of what action the State, skilled nursing facility, or nursing
> facility intends to take;
> (b) The reasons for the intended action;
> (c) The specific regulations that support, or the change in Federal or State
> law that requires, the action;
> (d) An explanation of--(1) The individual's right to request . . . a State
> agency hearing; . . . and
> (e) An explanation of the circumstances under which Medicaid is continued
> if a hearing is requested.

42 C.F.R. § 431.210. Further, a "State agency must grant an opportunity for a hearing to .

. . (2) Any recipient who requests it because he or she believes the agency has taken an

action erroneously." 42 C.F.R. § 431.220. Although the Agency "may require that a

request for a hearing be in writing,

> (b) The agency may not limit or interfere with the applicant's or recipient's
> freedom to make a request for a hearing.
> (c) The agency may assist the applicant or recipient in submitting and
> processing his request.
> (d) The agency must allow the applicant or recipient a reasonable time, not
> to exceed 90 days from the date that notice of action is mailed, to request a
> hearing.

42 C.F.R. § 431.221. Most importantly, and with immaterial exceptions,

> (a) If the agency mails the 10-day . . . notice as required under § 431.211 . .
> . of this subpart, and the recipient requests a hearing before the date of
> action, *the agency may not terminate or reduce services until a decision is
> rendered after the hearing . . . .*

8

42 C.F.R. § 431.230 (emphasis added). And finally, "[t]he agency must (a) Furnish Medicaid promptly to recipients without any delay caused by the agency's administrative procedures; [and] (b) Continue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible." 42 C.F.R. § 435.930.

The only correspondence in the record pertaining to the termination of J.W.M.'s MC+ benefits arrived, at the earliest, on the date benefits were actually terminated. Although the Defendants suggested at oral argument that Julia M. received a prior notice on August 3, that letter is not before the Court and there is no way of knowing what rights it informed Julia M. of. The letter that has been filed with the Court provides only that "coverage ended effective 8-23-2006 . . . because the full premium of $156.00 was not paid. Your children may not be eligible for MC+ health care coverage for six (6) months." Although the letter also notified Julia M. of her "right to appeal" by requesting "a hearing within 90 days of the date of this letter," this "standard correspondence" from the state agency makes no mention of J.W.M.'s right to have her benefits continued pending the outcome of that hearing under 42 C.F.R. § 431.230. Perhaps when the record is more fully developed, the state will be able to produce evidence that shows the missing August 3 letter did so apprise Julia M. of her rights to a hearing and to continued benefits pending its outcome, but that evidence is not presently before the Court.

Defense counsel also admitted during oral argument that no *ex parte* review of J.W.M.'s eligibility for continued benefits under any other Medicaid program was performed prior to the termination of her benefits. Counsel claims that any such review

9

would be futile in J.W.M.'s case because the MC+ program is already a backstop program and represents coverage of last resort. Nevertheless, after this suit was filed, the state did perform an ex parte review of J.W.M.'s status and determined that switching to a Medicaid spenddown program based on disability would be cost ineffective. Pl. Reply, Ex. A. Irrespective of the conclusion in J.W.M.'s case, the fact remains that the state does not routinely preform *ex parte* reviews of eligibility before benefits are terminated, as required by 42 C.F.R. § 435.930. Thus, the likelihood of success on the merits on this point is also high.

### C.    Remaining Factors

As for the balance between the harm to plaintiffs and the injury that granting the injunction would inflict on other parties, as well as a consideration of the public interest, the Court concludes that both weigh in favor of granting the preliminary injunction. If the injunction is granted, the state will be required to rewrite its notices of nonpayment, grant pre-deprivation hearings to those who request them, and continue benefits pending the outcome of such hearings, none of which is a trivial expense. However, such expense–which the regulations would seem to require anyway–is easily outweighed by a potential six-month lapse in health care coverage for children of the working poor. This is particularly true in the case of the Named Plaintiff since the bank error resulting in the coverage lapse would likely have been established and rectified while coverage remained in place if Plaintiff had just been given a pre-deprivation hearing. The public interest is also overwhelmingly served by resolving such errors quickly at a hearing while benefits

remain in place rather than forcing potentially expensive emergency room visits for uninsured children who are unable to pay for the cost of their care. In sum, the Court is satisfied that Plaintiffs have satisfied their burden to demonstrate that the *Dataphase* factors weigh in their favor.

**IV. Conclusion**

Accordingly, it is hereby

ORDERED that Plaintiffs' Motions for Preliminary Injunction [Doc. # 11] is GRANTED. Defendants are ENJOINED from terminating any class member's benefits for nonpayment without mailing a notice of pending termination to the recipient ten days prior to the termination which informs the recipient of her right to request a hearing within ten days and to receive continued benefits pending the outcome of that hearing. Defendants are further ENJOINED to conduct *ex parte* reviews of individual recipients' eligibility under any other Medicaid program prior to termination of benefits.


                                        s/ Nanette K. Laughrey
                                        NANETTE K. LAUGHREY
                                        United States District Judge


Dated: July 9, 2007
Jefferson City, Missouri

Case 2:07-cv-04036-NKL   Document 42   Filed 07/09/07   Page 11 of 11